541 So.2d 1003 (1989)
Jerry COLEMAN Plaintiff-Appellee,
v.
Ruby Strickland COLEMAN Defendant-Appellant.
No. 88-14.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
*1004 Gregory N. Wampler, Colfax, for plaintiff-appellee.
Martin S. Sanders, Jr., Winnfield, for defendant-appellant.
Before DOMENGEAUX, LABORDE and KNOLL, JJ.
LABORDE, Judge.
Plaintiff, Jerry Coleman, filed suit for separation from bed and board against his wife, Ruby Coleman, alleging cruel treatment. Ruby Coleman answered and filed a reconventional demand seeking a judgment of separation on the grounds of abandonment. After a trial on the merits, the trial judge granted a legal separation based on the mutual fault of both plaintiff and defendant. Defendant appeals, urging error in the trial judge's finding that she was at fault.[1] We affirm.

FACTS
Mr. and Mrs. Coleman were married on February 28, 1970. On July 31, 1985, Jerry Coleman left the matrimonial domicile and the parties have lived separate and apart without reconciliation since that time. At trial, Mr. Coleman testified that his wife would initiate heated arguments several times a week. The couple argued primarily about finances, the religious upbringing of their two children, and the amount of time Mrs. Coleman's mother spent at their house. Mr. Coleman claimed that the emotional stress and tension from these confrontations became so severe, that at times his children refused to speak to him. He also testified that his wife moved out of their bedroom, and that he feared she would move out of the house, taking the children with her.[2] Mr. Coleman left the matrimonial domicile after one particularly fierce argument with his wife and mother-in-law. He testified as follows:
"Q. I want to know what your wife did?
A. Well, okay. Ruby and I got into an argument.
Q. Over your son?
A. Well, at the time ... well, at the time over all ... everything had been building up.
Q. Alright.
A. And, all of this came up, and it was ... it was her mother and her. But Ruby didn't do anything, you know, physically to me, but she was arguing. And, they all ... and of course, that's when they all ... both kind of jumped on me there, you know, and screaming and a hollering and saying different things. And, so I just decided, well, I had enough of it, of the screaming, and a hollering, and a fighting, and being treated like I was being treated. So, I just told `em I was leaving...."
*1005 Mrs. Coleman admitted at trial that she had emotional problems which she claimed were caused by her husband. She acknowledged having had serious arguments with him three or four times a week. Mrs. Coleman also acknowledged refusing to have sexual relations with her husband for approximately six months.

TRIAL JUDGE'S DETERMINATION
The trial judge entered written reasons for his decision. He stated:
"Testimony and evidence produced at the trial on this matter shows [sic] that both parties would engage in arguments which resulted in cruel treatment of one party against the other and vice-versa. Further, Mr. Coleman admitted to having an argument with Mrs. Coleman's mother on July 31, 1985, which was of such an excess that caused Mrs. Coleman herself considerable distress and resulted in Mr. Coleman leaving the matrimonial domicile. Mrs. Coleman did admit however, that for some six months prior to the separation, she had denied Mr. Coleman sexual access to her. Mr. Coleman's testimony revealed that he considered such a denial to be cruel treatment on Mrs. Coleman's part.
Article 138 of the Louisiana Civil Code provides specific grounds for separation, and paragraph three of that article is specifically appropriate in this case, in that it states that a separation may be granted:
`On account of habitual intemperance of one of the married persons, or excesses, cruel treatment, or outrages of one of them toward the other, if such habitual intemperance, or such ill-treatment is of such a nature as to render their living together insupportable.'
Thus, this Court finds that both parties are at fault because of their cruel treatment of each other which has rendered their living together insupportable. Accordingly, the Court now turns to Louisiana Civil Code Article 141 which states:
`A separation from bed and board shall be granted although both spouses are mutually at fault in causing the separation. In such instances, alimony pendente lite may be allowed but permanent alimony shall not be allowed thereafter following divorce.'
Therefore, based on Article 138 in conjunction with Article 141 this Court finds both parties mutually at fault and grants the separation on that basis."

MUTUAL FAULT OF THE PARTIES
The jurisprudence is well-settled that in the area of domestic relations, the factual findings of the trial judge are accorded very substantial weight on review. The trial judge's finding of fact on the issue of fault will not be disturbed unless manifestly erroneous. Pearce v. Pearce, 348 So.2d 75, 78 (La.1977).
To constitute fault, a spouse's misconduct must not only be of a serious nature, but must also be an independent, contributing or proximate cause of the separation. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707, 709 (1958). It is not necessary for the parties to be guilty of equal fault as long as each spouse is found to have committed acts which constitute grounds for separation under LSA-C.C. art. 138. Watson v. Watson, 442 So.2d 1310, 1312 (La.App. 3d Cir., 1983), writ denied, 445 So.2d 450 (La.1984).
In the instant case, the trial judge's finding of mutual fault rested on a determination that the cruel conduct alleged by each party rendered their living together insupportable. After carefully reviewing the record, we find that the trial court did not err in finding mutual fault. Under Louisiana law and jurisprudence, a continued pattern of mental harassment, nagging and griping by one spouse directed at the other can constitute cruel treatment; whereas mutual incompatibility, fussing and bickering cannot. Loyd v. Loyd, 336 So.2d 912, 913 (La.App. 2d Cir.1976). The testimony of both parties indicated a fractured relationship characterized by a pattern of mutual harassment and nagging.[3]
*1006 Finally, we address the contention that the trial judge erred in considering evidence of Mrs. Coleman's refusal to have sexual relations with her husband for a period of six months.[4] It is within the discretion of the trial judge to admit or disallow evidence subject to an objection based upon the scope of the issues and pleadings. It is also discretionary for the trial judge to determine whether evidence is encompassed by the general issues raised in the pleadings. Coutee v. American Druggist Insurance, Co., 453 So.2d 314, 317 (La.App. 3d Cir.), writ denied, 458 So.2d 477 (La.1984). We find that the evidence of Mrs. Coleman's sexual denial was admissible for the purpose of explicating Mr. Coleman's allegation of cruelty.[5] Furthermore, the highly subjective determination of whether sexual denial constitutes fault mandates that a reviewing court grant great deference to a trial judge's finding. Derbes v. Derbes, 462 So.2d 302, 307 (La.App. 3d Cir.), overruled on other grounds, 477 So.2d 84 (La.1985). In the instant case, the trial judge did not err in finding that Mrs. Coleman's lack of sexual responsiveness constituted cruel treatment.
It is apparent that the trial judge believed that each spouse had sustained his or her burden of proof by establishing fault on the part of the other spouse. The record, taken as a whole, supports the factual conclusions of the trial judge. He supplied the correct legal standards to this case. Thus, we do not find that the trial judge abused his discretion in weighing the evidence and finding mutual fault on the part of both parties.
For the above and foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to defendant.
AFFIRMED.
NOTES
[1] We note that Mr. Coleman did not appeal the finding of fault on his part.
[2] The record indicates that the couple had separated prior to this occasion.
[3] Thus, we reject Mrs. Coleman's contention that the trial judge did not adequately take into account her mental problems. The record does not contain sufficient evidence for a finding that Mrs. Coleman's fault was excused because of mental illness.
[4] We note that the trial judge initially ruled that the testimony of Mr. Coleman relating to Mrs. Coleman's sexual denial was inadmissible. Mr. Coleman made a proffer of his evidence under LSA-C.C.P. art. 1636. Later, the trial judge allowed Mrs. Coleman to testify that she had refused sexual relations with her husband for about six months. This testimony was consistent with the proffered evidence.
[5] It is well-established in Louisiana jurisprudence that the unjustified, persistent denial of sexual intercourse constitutes "cruel treatment" within the meaning of LSA-C.C. Article 138. Bateman v. Larson, 452 So.2d 184 (La.App. 4th Cir.1984).